CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
11/29/2021
JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| VINCENT RAMON HICKS,<br>    Individually and as Next Friend of<br>    Aniya Nicole Hicks, a minor<br>and<br>ANIYA NICOLE HICKS,<br>    *Plaintiffs,*<br><br>v.<br><br>CITY OF LYNCHBURG,<br>and<br>LEE M. HUGHES<br>and<br>NATHAN R. GODSIE<br>and<br>HOLLIE N. BRETON<br>    *Defendants.*<br><br>**Serve: City Hall**<br>    **Walter C. Erwin, Esq.**<br>    **900 Church Street**<br>    **Lynchburg, Virginia 24504** | Case No.: 6:21cv00043 |

## AMENDED CIVIL COMPLAINT

1. This is an action for deprivation of civil rights under the Civil Rights Act, pursuant to 42 U.S.C. Secs. 1983, and under state law for assault and battery. Plaintiff brings this civil rights action to redress the deprivation under color of state law of the rights, privileges and immunities secured to her by the Constitution of the United States and the laws of the United States and the Commonwealth of Virginia. Plaintiff brings forth claims for violation of her right to be free from unreasonable and excessive use of force upon her person during arrest and detention in violation of the Fourth and Fourteenth Amendments, and state law

claims for assault and battery. Plaintiff brings this action against the Lynchburg City Police Officers responsible for her injuries, namely Lee Hughes, Nathan Godsie, Hollie Breton, and against the City of Lynchburg as being responsible for the conduct of the Lynchburg City Police Officers and final policymaker for the Lynchburg Police Department, which is sued as a person under 42 U.S.C. Sec. 1983, as the entity responsible for the promulgation of a policy or custom regarding the use of excessive force, as the Plaintiff seeks compensatory and punitive damages, declaratory and injunctive relief, and attorney's fees and costs.

## **JURISDICTION AND VENUE**

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. Sections 1331, 1343, and 1367.

3. Venue is proper in this District under 28 U.S.C. Sec. 1391(b), as a substantial part of the unconstitutional acts and omissions complained of occurred in the City of Lynchburg in the Western District of Virginia.

## **PARTIES**

4. At the time of the incident Vince Hicks was the father of Aniya Hicks, and resided within the Commonwealth of Virginia.

5. At the time of the incident Aniya Nicole Hicks, a juvenile, resided within the Commonwealth of Virginia.

6. Lynchburg City Government (the "City") operates from within City Hall at 900 Church Street, Lynchburg, Virginia 24504, and is a municipal corporation existing under the laws of the Commonwealth of Virginia. The City is a chartered subdivision of the Commonwealth of Virginia with the capacity to be sued. The City is responsible for the

actions, omissions, policies, procedures, practices, and customs of its various agents and agencies. At all relevant times, the City was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the Lynchburg City Police Department and its employees and agents complied with the laws of the United States and of the Commonwealth of Virginia. At all relevant times, the City was the employer of Defendants Lee M. Hughes (Hughes); Nathan R. Godsie (Godsie); and Hollie N. Breton (Breton); (hereinafter collectively referred to as "the individual defendants").

7. Lee Hughes worked at Lynchburg City Police Department at 905 Court Street, Lynchburg, Virginia 24504, at the time of the incident complained of. At all relevant times, Hughes was acting under color of law within the course and scope of his duties as an officer for the Lynchburg City Police Department. Also at all relevant times, Hughes was acting with the complete authority and ratification of his principal, the City.

8. Nathan Godsie worked at Lynchburg City Police Department at 905 Court Street, Lynchburg, Virginia 24504, at the time of the incident complained of. At all relevant times, Godsie was acting under color of law within the course and scope of his duties as an officer for the Lynchburg City Police Department. Also at all relevant times, Godsie was acting with the complete authority and ratification of his principal, the City.

9. Hollie Breton works at Lynchburg City Police Department at 905 Court Street, Lynchburg, Virginia 24504. At all relevant times, Breton was acting under color of law within the course and scope of her duties as an officer for the Lynchburg City Police Department. Also at all relevant times, Breton was acting with the complete authority and ratification of her principal, the City.

**FACTUAL BACKGROUND**

10. This incident occurred on March 7, 2020, at approximately 7:47 p.m., at River Ridge Mall (Mall) located at 3405 Candlers Mountain Road, Lynchburg, VA 24502.

11. Aniya Hicks, a 14-year-old adolescent, arrived at the Mall at approximately 6:00 p.m. on the night of the incident.

12. Defendant Breton and Officer Thompson were working at the mall off duty at the time of the incident.

13. The Officers believed a few children at the mall were displaying animosity toward one another.

14. Due to his perception of the children's behavior, Officer Thompson summoned a contingent of on duty police officers to the mall, and roughly twenty officers responded.

15. Lynchburg Police Officers detained one of the children named D.H. (juvenile Harrington).

16. Defendant Hughes then joined other officers in aggressively pushing away juveniles and others standing nearby.

17. Ms. Hicks expressed her concern to Defendants about their hostile treatment of the juvenile, without interfering or causing any commotion.

18. Defendant Hughes yelled at Ms. Hicks to get back and shoved her.

19. Ms. Hicks went back some, but attempted to stand her ground.

20. Defendant Hughes assaulted Ms. Hicks by causing her to reasonably apprehend that she would be subjected to imminent harmful and offensive contact.

21. Defendant Hughes then grabbed Ms. Hicks' right arm and swung her around tripping her and causing her to violently hit the floor.

22. Ms. Hicks ended up sitting on the floor, on her backside trying to get loose from Hughes' grasp.

23. Hughes then flipped Ms. Hicks over onto her stomach.

24. Once Hughes had Hicks face down, Defendant Godsie came over and unnecessarily mashed Hicks face into the floor.

25. Ms. Hicks received a substantial gash above her right eye after Godsie forced her face to the floor.

26. Ms. Hicks was then handcuffed and left sitting in the floor bleeding from her face.

27. After being handcuffed, Defendant Breton dragged a bloodied Ms. Hicks about 30 feet to a wall.

28. Ms. Hicks was not offered immediate medical attention.

29. Mr. Vince Hicks soon arrived to witness his daughter bleeding from the head, while being held in handcuffs.

30. Mr. Hicks was not allowed to take his daughter to go get stitches or any other type of treatment.

31. Ms. Hicks later received fourteen stitches to close the severe laceration above her right eye, and suffered headaches following the incident.

32. Ms. Hicks suffered psychological injuries as well, causing her to seek psychological treatment at Horizon Behavioral Health.

33. Ms. Hicks was denied access to social media, and anyone who was present at the mall on the date of the incident, for nearly a year, causing additional mental anguish, depression, and anxiety.

34. At the time Ms. Hicks was being seized the use of force was and/or became excessive and beyond that which was reasonably necessary in order to safely detain or arrest her.

35. The City knew of Godsie's history of violent behavior, citizen complaints, and use of excessive force.

36. The actions taken by Godsie may have been motivated by actual malice, conscious and deliberate violence and wrongdoing, evil or wrongful motive, intent to injure and ill will.

37. Prior to the assault of Ms. Hicks, Godsie is recorded saying he was going to "bust some heads," or something of that sort.

38. Hughes and Godsie are recorded after the incident attempting to lay blame for Ms. Hicks' injuries on her, as if she jumped head first into the floor.

39. The actions of Hughes, Godsie, and Breton were excessive, unreasonable, and violated Ms. Hicks' constitutional rights.

## COUNT I – FOURTH AMENDMENT VIOLATIONS; EXCESSIVE FORCE
(All Defendants)

40. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

41. At all relevant times herein, Plaintiff had a right, under the Fourth Amendment to the United States Constitution, to be free from unreasonable seizure by excessive force.

42. As alleged, all Defendants committed assault and battery, using excessive force upon Plaintiff in that Defendant Hughes threw Ms. Hicks to the ground and Defendants Breton and Godsie aided in the detainment of Ms. Hicks without cause, justification and/or provocation stemming from anything Plaintiff had done.

43. In acting as alleged in this Complaint, Defendants subjected Ms. Hicks to unnecessary and wanton infliction of physical injury, pain, suffering, and emotional distress.

44. In acting as alleged in this Complaint, Defendants violated Ms. Hicks' right to be free from unreasonable seizure by excessive force, guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

45. The <u>Graham</u> factors established that the Defendants use of force was objectively unreasonable under the Fourth Amendment.

46. Defendant Godsie intentionally and maliciously injured and harmed Ms. Hicks without provocation or reason, resulting in serious injuries.

47. The use of excessive force was deliberate and intentional and was not objectively reasonable under the circumstances. The force was applied maliciously and sadistically for the very purpose of causing harm and inflicting unnecessary and wanton pain and suffering.

48. By using excessive force on Ms. Hicks, Hughes, Breton, and Godsie deprived Ms. Hicks of rights remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of rights enforceable under 42 U.S.C. Sec. 1983, including, without limitation, rights guaranteed by the Fourth Amendment to the United States Constitution.

49. Defendants Hughes, Breton, and Godsie were on notice and had "fair warning" that their actions were unconstitutional.

50. The City was responsible for assuring that its employees and agents did not violate the rights of pretrial detainees by using excessive force, and for assuring that individuals employed in the Lynchburg City Police Department were properly trained and supervised regarding the use of excessive force.

51. The City of Lynchburg was personally involved in and responsible for the excessive force used against Ms. Hicks in that:

    a. They created or affirmed a policy and custom, and allowed the continuance of that policy and custom, under which detainees and individuals subject to arrest would be subjected to the use of excessive and unreasonable force;

    b. They were deliberately indifferent in supervising and training subordinates who committed the wrongful acts described herein;

    c. They required no annual training on how to prevent the use of excessive force; and

    d. They always affirmed the decision of the Lynchburg Police Department related to claims of excessive force and never independently investigated any of the claims.

52. The gross indifference by the City to the conduct of officers, which includes repeated failures to follow policy and procedures, unnecessary use of excessive force, roughness during arrests, and intimidation of suspects during arrests, led to the violation of Ms. Hicks's constitutionally protected rights. The failure of the City to take corrective action after learning of prior instances of the officers' misconduct, and the failure to properly train the officers, led to these violations.

53. All defendants acted according to the policies, regulations, and decisions officially adopted or promulgated by those persons whose acts may fairly be said to represent the official policy or were under a governmental custom, usage or practice of the City of Lynchburg.

54. These actions by defendants Hughes, Breton, and Godsie were of a malicious and intentional nature and manifested a deliberate indifference to the constitutional rights of Ms. Hicks.

55. Ms. Hicks' constitutional rights at issue were clearly established at the time of the violations by the Defendants.

56. Defendants acted under the pretense and color of state law. Defendants acted willfully, knowingly, and with the specific intent to deprive Ms. Hicks of her constitutional rights secured by 42 U.S.C. Sec. 1983 and by the Fourteenth Amendment to the United States Constitution.

57. As a direct and proximate result of Defendants' actions, and each of them, and acts of omission, described in this Complaint, Plaintiff has suffered injury, pain, and emotional distress as previously alleged.

58. In acting as is alleged in this Complaint, Defendants, and each of them, acted knowingly, willfully, and maliciously, and with reckless and callous disregard for Plaintiff's federally protected rights.

59. This was not the first time Officers of the Lynchburg Police Department injured citizens or attempted to maliciously prosecute them thereafter.

    a. Upon information and belief on March 29, 2001, Craig Morris, a black male, was sprayed with pepper spray and then struck several times by officers of the Lynchburg Police Department. The officers were allegedly putting Mr. Morris under arrest for using the term "f_ck", and Mr. Morris did not resist arrest or use any force against the officers, but nevertheless was beaten by said officer of the Lynchburg Police Department;

    b. Upon information and belief on October 18, 2013, Montavious Wells and Tramane Green, black males, were injured by officers of the Lynchburg Police Department when they were tazed and beaten by officers for allegedly getting smart when asked to identify what high school they went to. Neither Mr. Wells nor Mr. Green threatened the officers, threatened to flee from the officers, or posed a danger to any officers or the public;

    c. Upon information and belief on January 23, 2016, George Brown, a black male, was injured when officers of the Lynchburg Police Department ordered the police K9 to

attack Mr. Brown, while Mr. Brown was not resisting arrest or presenting any threat to the officers;

d. Upon information and belief on February 11, 2016, Brandon Sandifer, a black male, was injured when officers of the Lynchburg Police Department broke his leg during an arrest at his home for allegedly trespassing;

e. Upon information and belief on November 28, 2016, Donald Lipford, a black male, was injured when officers of the Lynchburg Police Department struck him several times and ordered the police K9 to attack Mr. Lipford, while he was not resisting arrest or presenting any threat to the officers;

f. Upon information and belief on November 5, 2017, Pamela Webber, a black female, was shot and killed by officers of the Lynchburg Police Department, when they were called to her residence on allegations that she was suicidal and had a knife. After barricading herself in her room Ms. Webber was convinced to come out by officers of the Lynchburg Police Department, and they shot her alleging that she "advanced" on the officer with the knife;

g. Upon information and belief on February 17, 2018, Walker Sigler was shot by officers of the Lynchburg Police Department, while he was in his home, committing no crime, not presenting a threat to the officers, was unarmed, and not attempting to flee the officers;

h. Upon information and belief on July 18, 2018, Larry Booker was struck by Officer Godsie with his baton over 30 times while Officer Godsie had his K9 attack Mr. Booker, all while Mr. Booker was on the ground (similar to Ms. Hicks);

  i. Upon information and belief on December 12, 2018, Michelle Jefferson, a black female, was injured by officers of the Lynchburg Police Department while they were serving a warrant on her at her home. She was grabbed and assaulted by the officers and charged with assault on law enforcement.

  j. Upon information and belief on December 30, 2018, Malik Andrews, a black male, was shot by officers of the Lynchburg Police Department after officers saw him with a rifle on his shoulder;

  k. Upon information and belief on March 30, 2019, Thyanna Trent, a black female, was assaulted and injured by officers of the Lynchburg Police Department, while allegedly trespassing while walking toward the exit at the River Ridge Mall in Lynchburg;

  l. Upon information and belief on June 16, 2019, Brian Anderson, a black male, was injured by officers of the Lynchburg Police Department for allegedly obstructing justice. Mr. Anderson was pulled out of his truck and thrown to the ground, had officers hold him down by knees, while other officers yanked his arms, causing injury to his shoulders;

  m. Upon information and belief on July 3, 2019, Mario Jackson, a black male, was injured by officer of the Lynchburg Police Department after he was stopped for an alleged "window tint violation."  After having Mr. Jackson exit his vehicle the officers grabbed him and slammed him against the car, threw him to the ground, then beat him while he begged the officers to stop.

60. Then on March 7, 2020, Aniyah Hicks, a black female, was injured by officers of the Lynchburg Police Department, requiring her to receive seven stitches to close a gash

above her eye, when she was assaulted, thrown to the ground, then had her face mashed to the ground by Officer Godsie, while she was presenting no danger to any officer or the public, was not attempting to flee, and was breaking no law, other than being present at a fight;

61. According to a September 1, 2019, article by Richard Chumney of the Lynchburg News and Advance, in 2016 police in Virginia failed to properly report 60% of officer-involved shooting, 30% in 2017, and 19% in 2018, including the shooting of Walter Seigler.

62. The Lynchburg Police Department is a Department under the control of the City of Lynchburg, who is the final authority related to the Departments policy.

63. According to the Lynchburg Police Department 2018 Annual Report in 2018 crime was down but the number of arrests was up. Also that of the 53 use of force incidents in 2018 44 were found to be within guidelines and 9 were still being reviewed. In other words none were found to be outside of the City's guidelines/policies.

64. The policy of the City of Lynchburg does not require the employees of the Lynchburg Police Department to have annual excessive force training.

65. The City of Lynchburg has the last say on the hiring and retention of employees of the Lynchburg Police Department.

66. At all times mentioned herein, each and every defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every defendant.

## COUNT II - ASSAULT AND BATTERY
(By Defendants: Hughes, Breton, and Godsie)

67. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

68. Upon information and belief, defendants Hughes, Breton, and Godsie repeatedly touched Ms. Hicks in a vicious, rude, insulting, brutal, unwanted and offensive manner.

69. The actions of Hughes, Godsie, and Breton constitute an intentional battery, and use of excessive force upon Ms. Hicks.

70. As a direct and proximate result of said acts, Ms. Hicks was caused injuries when she was thrown to the ground and detained by the individual defendants. Plaintiff has also suffered severe emotional distress and mental suffering as a result of these acts of physical brutality by the Defendants. Said acts of the Defendants has made it necessary for Ms. Hicks to obtain medical services and treatment.

71. As a result of the actions of the Defendants alleged herein, Plaintiff has suffered economic and non-economic damages in the forms of emotional distress, suffering, anxiety, medical bills, depression, and damage to her self-worth.

**COUNT III- INTENTIONAL INFLICTION OF EMOTIONAL DAMAGE**

72. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

73. As already detailed, the individual defendants assaulted and battered Ms. Hicks without cause or justification, with excessive force, causing Ms. Hicks severe pain and suffering, humiliation, emotional distress, mental and physical suffering and injuries to her head.

74. By reason of the foregoing, the individual defendants personally and intentionally inflicted emotional distress on Ms. Hicks. The acts of the individual defendants constitute outrageous behavior which reasonable people cannot be expected to tolerate, and are not privileged, justified or otherwise acceptable in a civilized society. The individual defendant's assaultive misconduct was extreme and outrageous to the extent that it went beyond the bounds of decency.

75. The assaulting conduct was perpetrated with reckless disregard of the emotional distress it caused Ms. Hicks.

76. Ms. Hicks suffered severe emotional distress as a result of the actions of the individual defendants.

77. The individual defendants' conduct was ratified by the City as the City knew, or should have known, of the individual defendants' propensity to assault, batter, and use excessive force, and failed to stop it.

78. As a direct and proximate result of the intentional misconduct of the individual defendants, Ms. Hicks suffered various physical symptoms associated with emotional distress, anxiety, nervousness, and depression. Additionally, Ms. Hicks suffered severe physical injuries and pain as a result of the assault committed on March 7, 2020. Ms. Hicks is entitled to punitive damages from all Defendants as the actions of the individual defendants were done with the intent of causing Ms. Hicks harm.

### COUNT IV- NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

79. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

80. Defendants had a duty to Ms. Hicks to act with reasonable care and prudence so as not to cause harm or injury to her.

81. By engaging in the acts alleged herein, it was reasonably foreseeable, and easily predictable, that the Defendants' actions would cause Ms. Hicks to suffer severe emotional distress.

82. Defendants' breach of their duty to Ms. Hicks directly and proximately caused Ms. Hicks to suffer severe emotional distress and mental anguish.

83. As a result of Defendants' actions, Ms. Hicks suffered damages in an amount to be proven at trial.

## COUNT V- NEGLIGENT TRAINING AND SUPERVISION

84. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

85. Upon information and belief, defendants failed to use reasonable care in the training and supervision of the aforesaid defendants who conducted and participated in the apprehension of Ms. Hicks.

86. That solely as a result of the negligence, recklessness and/or intentional acts of defendants as aforesaid, Ms. Hicks suffered great humiliation, degradation, emotional injuries; loss of freedom; deprivation of her federal constitutional rights; serious and severe personal injuries; pain and suffering; and sustained severe mental anguish.

## COUNT VI- GROSS NEGLIGENCE

87. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

88. At all times relevant hereto, the individual defendants had a duty to use reasonable care toward Ms. Hicks.

89. The individual defendants breached this duty of care during the events described above and were therefore negligent.

90. The individual defendants' conduct showed such indifference to others, including Ms. Hicks, that it constituted an utter disregard of caution amounting to a complete neglect of safety of another person. The individual defendants acted with such indifference that their conduct constituted gross negligence.

91. As a direct and proximate result of the individual defendants' negligence and grossly negligent breach of the standard of care, the individual defendants caused the injuries suffered by Ms. Hicks.

### COUNT VII – MALICIOUS PERSECUTION

92. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

93. Defendant Hughes swore out the warrants on Ms. Hicks for assault on law enforcement, when he knew such charges were without any factual basis and only to provide a cover for his and Godsie's criminal and assaultive behavior.

94. The charges were later dismissed.

95. Hughes swore out the warrants without probable cause.

### COUNT V - MUNICIPAL LIABILITY-RATIFICATION (42 U.S.C. § 1983)
(By Defendants: the CITY, Hughes, Breton, and Godsie)

96. Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

97. The acts of the individual defendants deprived Ms. Hicks of her particular rights under the United States Constitution.

98. Upon information and belief, the City, acting under color of law, who had final policy making authority concerning the acts of the individual Defendants, ratified the acts of the defendants' acts and the bases for them. Upon information and belief, the City knew of and specifically approved of the individual defendants' acts.

99. Upon information and belief, the City has determined (or will determine) that the acts of the individual defendants were "within policy."

100. Because of the aforementioned acts and omissions, Ms. Hicks suffered loss of her constitutional rights, pain and suffering.

101. Accordingly, the City, Hughes, Breton, and Godsie, each are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

102. Ms. Hicks seeks punitive damages and attorney's fees under this claim.

**COUNT VII - MUNICIPAL LIABILITY – Unconstitutional Custom or Policy (42 U.S.C. § 1983)**
(Defendant: the City of Lynchburg)

103. Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

104. The individual defendants acted under an expressly adopted official policy or a longstanding practice or custom of the City.

105. On information and belief, the individual defendants were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with Ms. Hicks' vicious assault and battery.

106. Historically officers of the Lynchburg Police Department were not disciplined or reprimanded, suspended, or otherwise retrained following incidents with citizens where the citizen received a serious injury from the officers.

107. The City, Hughes, Breton, and Godsie, together with other policymakers of the City and supervisors, maintained, inter alia, the following unconstitutional customs, practices, and policies:

    a. Using excessive force, and unnecessary non-deadly force;

    b. Providing inadequate training regarding the use of force;

    c. Employing and retaining as police officers individuals such as Defendants Hughes and Godsie, whom The City at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force;

d. Inadequately supervising, training, controlling, assigning, and disciplining the City officers, and other personnel, including Defendants Hughes, Breton, and Godsie, whom the City knew or in the exercise of reasonable care should have known, had the aforementioned propensities and character traits;

e. Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by the City officers, Defendants Hughes, Breton, and Godsie;

f. Failing to adequately discipline the City police officers, including Defendants Hughes, Breton, and Godsie, for the above-referenced categories of misconduct, including "slaps on the wrist," discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate disciplines that is tantamount to encouraging misconduct;

g. Announcing that use of excessive force is "within the policy," including shootings that were later determined in court to be unconstitutional;

h. Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simply "code of silence," under which police officers do not report other officers' errors, misconduct, or crimes. Under this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other officers' wrongdoing;

i. Maintaining a policy of inaction and an attitude of indifference towards use of excessive force, including by failing to discipline, retrain, investigate, terminate,

and recommend officers for criminal prosecution who participate in beating of unarmed people;

j. Providing inadequate training regarding handling situations with unarmed people.

108. By reason of the aforementioned acts and omissions, Ms. Hicks has suffered pain and anguish, and loss of enjoyment of quality of life.

109. Defendants, the City, Hughes, Breton, and Godsie, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Ms. Hicks, and other individuals similarly situated.

110. By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts Hughes, Breton, and Godsie acted with intentional, reckless, and callous disregard to Ms. Hicks constitutional rights. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants the City, Hughes, Breton, and Godsie were affirmatively linked to and were a significantly influential force behind the injuries of Ms. Hicks.

111. Accordingly, Defendant City of Lynchburg is liable to Ms. Hicks for compensatory damages under 42 U.S.C. § 1983.

112. Ms. Hicks seeks punitive damages and attorneys' fees under this claim.

**WHEREFORE**, plaintiff requests damages as follows:

A. Against all defendants, jointly and severally, for compensatory damages in the amount of two hundred and fifty thousand dollars ($ 250,000.00);

B. Against all defendants, jointly and severally, for punitive damages in the amount of fifty thousand dollars ($ 50,000.00);

C. Declaratory relief that the policies, practices, procedures, conditions and customs of the defendant violate the Plaintiff's right to be free from the use of excessive as secured to her by the Fourteenth Amendment to the United States Constitution;

D. Injunctive relief enjoining the defendants from engaging in the use of excessive force and other actions violative of the Plaintiff's rights under the Fourteenth Amendment to the United States Constitution;

E. For costs and reasonable attorneys' fees pursuant to 42 U.S.C. Sec. 1988; and

F. For such further relief as the Court deems just and proper.

**A JURY TRIAL IS DEMANDED**

/s/ Carlos A. Hutcherson
Carlos A. Hutcherson, Esq. (VSB#83100)
Hutcherson Law, PLC
3610 Campbell Avenue
Lynchburg, Virginia 24501
Telephone:    (434) 455-8100
Facsimile:    (888) 351-0363
c.hutchersonesq@yahoo.com
*Counsel for the Plaintiff*

/s/ Steven D. McFadgen, Sr.
Steven D. McFadgen, Sr., Esq. (VSB#83273)
McFadgen Law, PLC
3831 Old Forest Road, Suite 6
Lynchburg, Virginia 24501
Telephone:    (434) 385-4579
Facsimile:    (888) 873-1048
muchmorelaw@gmail.com
*Counsel for the Plaintiff*